IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**EDWINA LEAL,**

    Plaintiff,

vs.                                                           No. CIV

**NEW MEXICO CORRECTIONS DEPARTMENT**     **JURY TRIAL DEMANDED**
**and WILLIAM HENDRIX, Individually,**

    Defendants.

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

Plaintiff Edwina Leal, by and through undersigned counsel, state:

**Parties, Jurisdiction and Venue**

1. Plaintiff Edwina Leal (hereafter "Leal" or "Plaintiff") is a female citizen of the United States and a resident of Roswell, Chaves County, New Mexico.

2. Defendant New Mexico Corrections Department (hereafter "the Corrections Department") formerly employed Ms. Leal at the Roswell Correctional Center. Based on the number of employees and the duration of their employment, the Corrections Department is an employer subject to the statutory requirements of Title VII.

3. Upon information and belief, William Hendrix ("Hendrix") is a resident of Roswell, Chaves County, New Mexico, presently residing at the Roswell Correctional Center. He is sued in his individual capacity.

4. At all times material, Hendrix was a Deputy Warden at the Roswell Correctional Center ("RCC") and was acting under color of law and in the course and scope of his employment.

5. The events giving rise to this complaint occurred at the RCC in Chaves County, New Mexico.

6. This Court has jurisdiction over the parties and the subject matter of this action.

7. Venue is proper in this court.

8. Plaintiff has exhausted her administrative remedies as to her claims against Defendant Corrections Department under 42 U.S.C. Section 2000e, Title VII of the Civil Rights Act of 1991 (hereafter "Title VII"), having timely filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC").

9. On December 17, 2006, Plaintiff Leal received a Dismissal and Notice of Rights from the EEOC. Leal has timely filed this action within ninety (90) days of her receipt thereof.

## General Allegations Common to All Counts

10. At material times, Plaintiff was employed by the Corrections Department and worked at the at the Roswell Correctional Center ("RCC"), which is under the management and authority of the Corrections Department.

11. Plaintiff began to work at the RCC in December, 1995 as a Classification Officer.

12. In May, 2001, Plaintiff assumed the duties of Classification Supervisor, a position to which she was formerly promoted on June 2, 2002, and the position she held until her separation from employment in May of 2007.

13. At all times during the nearly twenty-two (22) years Plaintiff worked for the Corrections Department, Plaintiff's work performance was satisfactory or better.

14. From 1999 through the end of her employment, Plaintiff's supervisor was Defendant Hendrix, RCC Deputy Warden.

15. In the last years while employed by the Corrections Department at the RCC, Plaintiff was subjected to a sexually hostile work environment. The acts of sexual harassment were undertaken by Defendant Hendrix and included but were not necessarily limited to inappropriate and suggestive remarks, urging Plaintiff to engage in a personal relationship with him, and touching of a sexual nature.

16. The acts of sexual harassment were frequent and regular.

17. In 2006 and continuing into 2007, Plaintiff was subjected to the following unwanted acts of sexual harassment by Hendrix:

   A. She was regularly touched by Hendrix. He would put his hands on her back, lower back, neck, and shoulders. He gave her unwelcome back rubs, would rub her shoulder, and would grab her shoulders or arms. He also would hug her against him and would resist her attempts to pull away.

B. Hendrix frequently commented on Plaintiff's appearance, told her that she was beautiful and made comments such as "you're so fine" and "you have a nice ass." He would also look at her in a leering manner.

C. Hendrix demanded a great deal of personal attention from Plaintiff and constantly drew her away from her work and tried to get her to focus on him and his issues. He would hover around her and reacted jealously when others were in her office or had her attention.

D. When Hendrix was not getting the attention he demanded or when Plaintiff didn't include him in a lunch away from work or share a cigarette with him, he would become hostile and uncooperative, delaying or refusing to sign papers and otherwise refusing to work with her, thus thwarting her ability to do her job.

E. Hendrix complained to Plaintiff if he didn't like the appearance or dress of her subordinates and imply that she should do something about it. He also would call her subordinates obscene names which she found offensive and further disrupted her work.

F. Hendrix frequently made innuendos and sexual comments, such as reporting to Plaintiff in graphic detail sexual dreams he had about her, and telling her woke up in a sweat, afraid that he woke his wife by calling out Plaintiff's name in his sleep.

G.  Hendrix told Plaintiff to kick out her boyfriend so that he could move in with her.

18. Hendrix' behavior escalated over time. It culminated on Friday, March 2, 2007, when Hendrix closed the doors to his office, grabbed her, pressed her against him, held her in a forceful full frontal hug, rubbed against her and whispered in her ear that he was sorry for fighting with her, that he had a crush on her and told her to "just wait until I retire."

19. On the following Monday, March 5, 2007, Edwina Leal reported what had occurred to first Warden Martin and later to Associate Warden Keith Miller of the Roswell facility.

20. At the time she complained to the Warden, he assured her that he would take care of the problem and prohibit retaliation. According to Policy CD-033201 addressing sexual harassment complaints, enclosed, the first listed reporting procedure states that she should report to the appropriate authority, with the Warden specifically identified as an appropriate person to whom the report could be made.

21. The Warden did not require or ask Plaintiff to first file a written complaint before he would act on the matter. He also did not report it pursuant to policy. Associate Warden Miller did not take action either.

22. On March 9, 2007, Hendrix began to harass Ms. Leal again. He asked her what she had been talking about with another co-worker. He learned that she had agreed to sponsor another employee for a charity bowling

event, rather than sponsoring him, and he was annoyed about that and began making rude remarks to her.

23. At that point, Plaintiff had reached the end of her tolerance. She was upset and wanted to quit. The Warden learned of this and told her to take some time off.

24. Plaintiff honored the Warden's request and took some time off. Plaintiff was put on medical leave as a result of the stress she was under.

25. During her time off, she procured a copy of the sexual harassment policy and forms in order to submit a formal grievance.

26. On information and belief, Hendrix learned of her request for the policy and he also knew she had orally complained about his behavior toward her.

27. Plaintiff learned that while she was out on leave and after she had complained to the Warden, that Hendrix had called a meeting of the employees who reported to her and he discussed counseling her for her temper, revealed information about her medication, and other matters inappropriate for group discussion and disclosure to subordinate employees.

28. Plaintiff had reasonably reported the matter to the Warden and reasonably relied on his statements that he would take care of it. When he did not and she became the target of retaliation, she submitted a written grievance to bring the matter to the attention of others.

29. When Plaintiff returned to work, she found herself the target of an investigation, which investigation was believed to have been initiated at the behest of Hendrix and in retaliation for the complaint she made and her intent to follow it up with a formal grievance.

30. The complaint against Plaintiff that she faced when she returned to work had been filed by Antoinette Zunich.  Ms. Zunich and Hendrix formerly worked together at Southern New Mexico Correctional Facility.  They had a long-term, friendly relationship.  Hendrix had been ecstatic to hear that Ms. Zunich was coming to work at Roswell Correctional Center.

31. Shortly Plaintiff complained about Hendrix' behavior, Hendrix' friend Zunich filed a grievance against Ms. Leal, which grievance was retaliatory in nature.  The grievance was highly suspect and likely the combined effort of Zunich, a disgruntled employee named Amy Jo English, and perhaps others, done at the behest of Hendrix.

32. When Plaintiff returned to work, she learned of allegations that had been launched against her during her absence and the Internal Affairs investigation of same.

33. Plaintiff felt the situation was hopeless.  She could not tolerate the continued harassment and the lack of effective response to her complaints.  She submitted her resignation, effective May 19, 2007.

34. Plaintiff cooperated with the Corrections Department investigation of her complaints about Hendrix that was handled by Internal Affairs at the same time it investigated the allegations against her.

**Count I: Hostile Work Environment Sexual Harassment
Brought Pursuant to Title VII
<u>Against Corrections Department</u>**

35. Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set out herein.

36. During the course of her employment with the Corrections Department, Plaintiff was subjected to acts of sexual harassment, which included severe or pervasive conduct of a sexual nature, all of which conduct Plaintiff did not welcome.

37. Unwelcome severe and pervasive behavior toward Plaintiff, and the inadequacy of the Corrections Department's response thereto, had the purpose and effect of unreasonably interfering with Plaintiff's work performance and/or creating an abusive, intimidating, hostile and offensive work environment, which directly affected the terms, conditions, and privileges of Plaintiff's employment and violated her statutory right to be free from discrimination on the basis of sex.

38. The Corrections Department failed to take adequate measures to prevent, investigate and eradicate sexual harassment in Plaintiff's workplace.

39. On information and belief, the Corrections Department did not mandate sexual harassment training for all high ranking employees such as wardens and deputy wardens.  In addition, the Corrections Department had previously disciplined Hendrix for sexual harassment, but obviously inadequately because the behavior continued.

40. The Corrections Department knew or should have known that the potential for sexual harassment was high because of prior complaints and observation of inappropriate acts in the workplace.  By allowing this sexually hostile environment to continue, and by allowing the persons who created such an environment to continue in their positions without adequately addressing or remediating their behavior, the Corrections Department permitted the discriminatory and hostile work environment.

41. Plaintiff further alleges that the acts of the Corrections Department, through its employees and agents, singularly or in combination, constituted sexual harassment and discriminatory and disparate treatment of Plaintiff, as a consequence of her sex.

42. The Corrections Department's condonation, ratification, tacit approval, acquiescence in and perpetuation of sexual harassment has caused Plaintiff to suffer severe humiliation, degradation and emotional and physical distress, as well as economic losses, for which she is entitled to recover compensatory damages against Defendant Corrections Department.

43. The Corrections Department's employee and agent, Defendant Hendrix, acted in a willful, wanton, malicious, intentional and unlawful manner, and in reckless disregard of Plaintiff's rights, and under Title VII, thereby entitling Plaintiff to exemplary or punitive damages in an amount which bears a reasonable relationship to her actual damages.

## Count II: Retaliation
## Brought Pursuant to Title VII
## <u>Against Corrections Department</u>

44. Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set out herein.

45. Plaintiff engaged in acts of opposition and participation, including but not limited to resisting unwelcome sexual comments and other verbal conduct of a sexual nature, and reporting same to the Warden and to the Assistant Warden, as well a submitting a formal grievance, which acts of opposition and participation are statutorily protected by Title VII.

46. Managerial employees of the Corrections Department, with knowledge and in response to Plaintiff's opposition as described above, subjected Plaintiff to adverse employment action, including but not limited to setting Plaintiff up for an Internal Affairs investigation without sufficient cause, and ultimately, created and condoned a continuing retaliatory and hostile work environment that Plaintiff could not tolerate.

47. The retaliatory grievance was that was submitted against Plaintiff while she was on leave, shortly after she had complained to the Warden about the sexual harassment, and the subsequent investigation, had the potential effect of subjecting her to a demotion, a reassignment or other disciplinary action.

48. The Corrections Department's actions and inactions created working conditions so difficult and intolerant to Plaintiff that she resigned.  These conditions were such that a reasonable person in Plaintiff's position would

have no choice but to cease working for the Corrections Department, as she did.

49. As a direct and proximate result of the actions of the Corrections Department's employees and agents, Plaintiff has suffered harm for which she is entitled to compensatory and punitive damages.

50. The Corrections Department's employees and agents, including those named herein, acted in a willful, malicious, intentional and unlawful manner, and in reckless disregard of Plaintiff's rights, and Plaintiff demands and is entitled to exemplary or punitive damages in an amount which bears a reasonable relationship to her actual damages.

### Count III: Civil Rights Violation
### Brought Pursuant to 42 U.S.C § 1983
### Against Defendant Hendrix, Individually

51. Plaintiff Leal incorporates the allegations contained in the preceding paragraphs as though fully set out herein.

52. This Count is based on both equal protection and substantive due process theories.

53. Defendant Hendrix violated Plaintiff's equal protection rights by his actions alleged above which were unwelcome and constituted sexual harassment and were done with intent to harass based on Plaintiff's gender. Further, the acts of sexual harassment were sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and to create a hostile and offensive work environment.

54. Defendant Hendrix violated Plaintiff's right to not be deprived of her liberty without due process of law as guaranteed by the substantive due process clause of the Fourteenth Amendment to the United States Constitution based on his conduct as alleged herein.   Hendrix' conduct constituted an invasion of Plaintiff's personal privacy and bodily integrity which is shocking to the conscience.

55. As a direct and proximate result of Hendrix's conduct, Plaintiff Leal has sustained physical harm and severe emotional pain and suffering, as well as economic loss, for which she is entitled to compensatory damages.

56. Hendrix acted in a willful, wanton, malicious, intentional and unlawful manner, and in reckless disregard of Leal's safety and rights, and Leal demands and is entitled to exemplary or punitive damages against Hendrix in his individual capacity in an amount which bears a reasonable relationship to her actual damages.

## Prayer for Relief

**WHEREFORE**,  Plaintiff respectfully prays for the following relief:

A. Jury trial on all issues so triable;

B. Compensatory damages against the Defendants jointly and severally in appropriate amounts (as yet undetermined);

C. Punitive damages against the defendants severally, as to Defendant Corrections Department of New Mexico on her claims under Title VII in Counts I and II, as to Defendant Hendrix, individually, on her claims in Count  III, in appropriate amounts (as yet undetermined);

D. Reasonable attorney's fees and costs;

E. Pre- and post-judgment interest as applicable; and

F. Such other and further relief as the Court deems proper.

Respectfully submitted,

**ALMANZAR & YOUNGERS, P.A.**

*/s/ electronically filed 3/16/08*
JOLEEN K. YOUNGERS
P.O. Box 7256
Las Cruces, NM  88006
575/541-8000
575/541-9000 (Fax)

*Attorney for Plaintiff*